IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FRANK MCCLINTON,

    Plaintiff,

v.

DR. KARL HOFFMAN,

    Defendant.

OPINION and ORDER

Case No. 17-cv-472-wmc

*Pro se* plaintiff Frank McClinton has been granted leave to proceed against Dr. Karl Hoffman under 42 U.S.C. § 1983 for discontinuing his tramadol prescription in violation of his Eighth Amendment right to adequate medical care. Currently before the court are the parties' cross motions for summary judgment. (Dkt. ##25, 29, 37.)[1] Since no reasonable trier of fact could conclude that Dr. Hoffman failed to exercise medical judgment when he discontinued McClinton's tramadol prescription, the court will grant Dr. Hoffman's motion, deny McClinton's motions and enter judgment in Dr. Hoffman's favor.

UNDISPUTED FACTS[2]

Currently, and at all times relevant to this lawsuit, McClinton was incarcerated at New Lisbon Correctional Institution ("NLCI"), where Dr. Hoffman was working as a

---

[1] McClinton also recently filed a motion for assistance in recruiting counsel (dkt. #49), a motion in limine (dkt. #52), and a motion opposing defendants' request to say this action (dkt. #53). Since all of these motions are trial-related, the court is denying them as moot.

[2] Unless otherwise noted, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence submitted in support, all viewed in a light most favorable to plaintiff as the non-moving party. Since McClinton did not file a response to defendant's proposed findings of fact, the court

1

physician. McClinton has multiple chronic health issues, including diabetes, extreme obesity, and chronic back pain due to lumbar spinal stenosis (a narrowing of the spine that pinches nerves in the lower back and disc protrusion). According to McClinton, he had been prescribed oxycodone medications to address his back pain before being incarcerated.

In April 2016, Dr. Hoffman prescribed McClinton tramadol 100 mg, three times a day, to treat his chronic back pain while he waited to be seen by a neurosurgeon. Dr. Hoffman explains that tramadol is a pain medication similar to an opioid, and the FDA has designated tramadol as a controlled substance, meaning that it has potential for abuse or addiction.

On October 11, 2016, Dr. Hoffman examined McClinton to assess his diabetes, and noted that McClinton's weight had increased from 343 pounds in July 2016 to 357 pounds. (Hoffman Decl., Ex. 1000 (dkt. #28-1) 8.) He also noted that McClinton was experiencing a rising number of hypo/hyperglycemic episodes, meaning his blood sugar was fluctuating. During that same appointment, McClinton told Dr. Hoffman the tramadol was helping his pain level, but Dr. Hoffman questioned whether tramadol was helping McClinton be more active, since he was still gaining weight. Dr. Hoffman acknowledges that he "cannot be certain that the Tramadol caused him to gain weight" -- "as the amount of movement and exercise he was getting would be a factor along with what he was eating

---

has seemed defendant's proposed findings of fact undisputed. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules is an admission.").

along with his canteen purchases" -- but he also attests that "the weight gain he was experiencing would drive his diabetes to poorer control." (Hoffman Decl. (dkt. #28) ¶ 11.)

On October 11, Dr. Hoffman further noted that McClinton's obesity remained an issue, and he encouraged him to move and walk around, explaining that losing weight would help lower his blood sugar. Dr. Hoffman also noted that if McClinton's weight continued to increase, he would taper McClinton off the tramadol, and explained as much to McClinton, warning him that continued weight gain not only posed health risks related to his diabetes, but calls into question continuing him on tramadol.[3]

As a result of his concerns, Dr. Hoffman decided to track McClinton's weight. So, on October 18, 2016, he ordered McClinton to have his weight checked weekly. On November 4, 2016, Dr. Hoffman renewed McClinton's tramadol prescription for one month, but also ordered another weight check to take place on November 31, 2016.

On that date, McClinton weighed 351 pounds, and it is undisputed that a nurse discussed McClinton's need to lose weight, and explained that if he continued to gain weight Dr. Hoffman would taper off the tramadol. On December 5, 2016, Dr. Hoffman also reviewed McClinton's weight check, decreasing his tramadol prescription to 50 mg three times a day, as need, for one month with one refill. Dr. Hoffman explains in his declaration that he decreased McClinton's tramadol because he was severely overweight and had diabetes. Specifically, Dr. Hoffman explains that he was concerned about a risk that McClinton could experience a hypo/hyperglycemic episode that could severely impair

---

[3] Weight gain is dangerous for patients with diabetes because it increases the risk of hypoglycemia, and over time weight gain renders diabetes difficult to control, which can lead to serious vascular issues, such as heart attack, amputation or death. (Hoffman Decl. (dkt. #28) ¶ 11.)

his health or lead to his death. In Dr. Hoffman's opinion, it was safer for McClinton to reduce his tramadol intake, which in his opinion lowered his risk of a serious side effect, than to continue him on that medication.

Finally, on February 5, 2017, Dr. Hoffman chose not to renew McClinton's tramadol prescription at all. Although the record does not reveal McClinton's exact weight by February,[4] as with his December decision to decrease the tramadol dosage, Dr. Hoffman attests that he continued to believe the benefit of tramadol (pain relief) was greatly outweighed by the risk that McClinton could suffer a severe hypo/hyperglycemic episode that could severely impair his health or kill him if he continued on tramadol. Dr. Hoffman further attests that he was also concerned about keeping him on an opioid like tramadol, given McClinton's history of addiction.

Shortly after his tramadol prescription was discontinued, McClinton submitted several Health Services Requests ("HSRs") complaining about back pain. Specifically, in a February 7, 2017, HSR, McClinton asked Dr. Hoffman to provide him something for his back pain. In response, Dr. Hoffman prescribed Tylenol 500 mg in two tabs, administered twice a day as needed, explaining in his declaration that unlike tramadol, Tylenol 500 mg should not increase the risk of a hypo/hyperglycemic episode for diabetic patients.

In response to McClinton's other HSRs seeking stronger pain medication, both Dr. Hoffman and nursing staff explained that he was scheduled for medical appointments. (*See*

---

[4] McClinton attached to his declaration two documents that *appear* to report his weight in December and January, but show no weight loss. Those documents, entitled Nursing Encounter Protocols, again list his December 8, 2016, weight at 351 pounds, and his January 9, 2017, weight increased to *360* pounds. (Dkt. ##30-41, 30-41.)

4

Ex. 1001 (dkt. #28-2) 23-28.) Dr. Hoffman attests that he continued to believe it was better to keep McClinton off tramadol to avoid the risk of a hypo/hyperglycemic episode. On March 15, 2017, Dr. Hoffman again met with McClinton to follow up on his chronic pain complaints. To address his pain and swelling, Dr. Hoffman also ordered Meloxicam at 7.5 mg two times a day, and acetaminophen 650 mg administered four times a day, each for the next year. That same day, Dr. Hoffman also reviewed McClinton's records and provided him a memo, explaining that: he had prescribed McClinton tramadol to get him through surgery, but the surgeon did not recommend surgery; and he had agreed to keep McClinton on tramadol to allow him to exercise for weight loss, but his weight had instead steadily risen from 298 to 340 pounds. (Ex. 1000 (dkt. #28-1) 76.)

OPINION

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then to survive summary judgment, the responding party must provide evidence "on which the jury could reasonably find" for him. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When the parties cross-move for summary judgment, as here, the court looks to the burden of proof that each party would bear on the issues at trial and requires the party with the burden to go beyond the pleadings to establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party here fails to

establish the existence of an element essential to his case, and on which that party will bear the burden at trial, then summary judgment against him is appropriate. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

The Eighth Amendment extends to plaintiff McClinton the right to receive *adequate* medical care while in prison. *Estelle v. Gamble*, 429 U.S. 97 (1976). Accordingly, to prevail on a claim of constitutionally inadequate medical care, plaintiff must demonstrate two elements: (1) an objectively serious medical need; and (2) a state official who was deliberately (that is, subjectively) indifferent to that need. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The defendant here, Dr. Hoffman, essentially concedes that McClinton's chronic pain meets the standard of a serious medical need; instead, he seeks judgment on the grounds that no reasonable juror could find his decision to taper McClinton off tramadol supported an inference of deliberate indifference. For his part, McClinton seeks judgment on the ground that Dr. Hoffman knew he was in severe pain and did not provide proper mediation.

Unfortunately for plaintiff, it is not enough to show that he disagreed with Dr. Hoffman's choice of pain medication, or even that a different doctor might choose a different medication or treatment. Rather, "deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, deliberate indifference is *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

The *threshold* for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense"). In particular, therefore, a jury may "infer deliberate indifference on the basis of a physician's treatment decision [when] th[at] decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)).

In this case, plaintiff's evidence falls far short of this threshold, and thus, Dr. Hoffman is entitled to judgment in this favor because his decisions about McClinton's tramadol prescription were grounded in his medical judgment. Indeed, it is undisputed that in February 2017, Dr. Hoffman was legitimately concerned that the combination of McClinton's obesity and diabetes put him at an increased risk of severe

7

hypo/hyperglycemic episode. Further, in terminating the prescription altogether in February 2017, Dr. Hoffman attests that he was also concerned about the addictive quality of tramadol. Although Dr. Hoffman could not directly tie the tramadol to McClinton's inability to lose weight, he understandably believed that the tramadol prescription was not providing McClinton the pain relief that would assist him to move around and (hopefully) lose weight. Moreover, Dr. Hoffman presents undisputed evidence that he only prescribed tramadol in the short-term, because McClinton had a neurosurgery consult, believing that if the neurosurgeon were to recommend surgery, tramadol would have been an appropriate, short-term medication leading up to that surgery, *not* a long-term treatment for his back pain.

McClinton does not address, much less dispute Dr. Hoffman's explanation for discontinuing his tramadol prescription, including his March 2017 memorandum in which he detailed his reasons for initially prescribing and then later tapering him off that medication. Nor does McClinton suggest that tramadol was in any way helping him lose weight between October 2016 and February 2017. Regardless, McClinton's weight appears to have remained somewhat consistent, if not worsening, and concerningly high throughout his use of tramadol.

Instead, McClinton maintains that Dr. Hoffman knowingly left him without any way to treat his pain, but that conclusion is simply not supported by the record. Dr. Hoffman did not abruptly terminate the prescription. First, he began monitoring McClinton's weight to confirm his impression that McClinton's use of tramadol was having no material impact on his level of activity, even advising him that a lack of progress on his

8

weight gain would likely lead to a departure from tramadol. Second, he decreased the tramadol prescription in December, easing him off dependence on that drug. Third, on February 7, just two days after Dr. Hoffman finally terminated the tramadol prescription, Dr. Hoffman prescribed McClinton Tylenol 500 mg (two tabs, twice a day), responding to his complaints of back pain and reasoning that this pain medicine would not carry the same risk of a severe hypo/hyperglycemic episode or long-term addiction. Finally, in March, Dr. Hoffman adjusted McClinton's medication, again responding to his complaints of pain, by increasing his Tylenol dosage and adding Meloxicam.

Although McClinton may not have been satisfied with these adjustments to his medication, there is no basis for a reasonable jury to infer that Dr. Hoffman failed to exercise medical judgment or that his approach was so far afield from accepted medical practices with respect to prescribing pain medication as to lack medical judgment. To the contrary, given the medical community's general reluctance to prescribe long-term use of opioid-type pain medications, the only reasonable inference to be drawn from the evidence of record is that Dr. Hoffman had a solid basis to taper and then cancel the tramadol prescription. *See Burton*, 805 F.3d at 785 (affirming finding that doctor who declined to prescribe narcotics to detainee was acting reasonably, not in a "substantial departure from accepted professional judgment, practice, or standards") (quoting *Jackson v. Kotter*, 541 F.3d 668, 697 (7th Cir. 2008)); *see also Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996) ("Using [pain killers] entails risks that doctors must consider in light of the benefits. . . . Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

While McClinton argues that Dr. Hoffman should have kept him on tramadol, pointing to his previous experience being prescribed oxycodone, this argument has no traction. As an initial matter, McClinton fails to detail when he received those prescriptions, much less provide evidence of the reasoning and opinions held by the medical professionals providing those prescriptions. More importantly, even assuming other health care professionals deemed oxycodone appropriate for McClinton at some earlier date, that does not suggest that Dr. Hoffman's decision to taper McClinton off tramadol in 2016 and 2017 was blatantly inappropriate or somehow lacking in professional judgment. At worst, McClinton points to a difference in medical opinion, but McClinton's or even McClinton's doctors' disagreement with Dr. Hoffman's medical judgment does not permit a reasonable inference of deliberate indifference. *See Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)); *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (while a prisoner is entitled to reasonable measure to prevent a risk of harm, he "is not entitled to the best care possible").

Accordingly, no reasonable trier of fact could conclude that Dr. Hoffman's decision to terminate McClinton's tramadol prescription constituted deliberate indifference. As such, the court will deny plaintiff's motions for summary judgment, grant defendant's motion for summary judgment, enter judgment in Dr. Hoffman's favor and close this case.

ORDER

IT IS ORDERED that:

1. Defendant Karl Hoffman's motion for summary judgment (dkt. #25) is GRANTED.

2. Plaintiff Frank McClinton's motions for summary judgment (dkt. ##29, 37) are DENIED.

3. Plaintiff's motion for assistance in recruiting counsel (dkt. #49), motion in limine (dkt. #52), and a motion opposing defendants' request to say this action (dkt. #53) are DENIED as moot.

4. The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 19th day of January, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge